```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      SOUTHERN DIVISION AT LONDON
```

LORETTA STEWART,                )
                                )
    Plaintiff,                  )
                                )          Case No.
v.                              )         6:17-cv-300-JMH
                                )
NANCY C. BERRYHILL,             )    **MEMORANDUM OPINION & ORDER**
ACTING COMMISSIONER OF SOCIAL   )
SECURITY,                       )
                                )
    Defendant.                  )

                              ***

Plaintiff Loretta Stewart brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the cross-motions for summary judgment filed by the parties, will **AFFIRM** the Commissioner's decision as no legal error occurred and the decision is supported by substantial evidence.

### I.  Standard for Determining Disability

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See*

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Stewart initially filed an application for Title XVI Supplemental Social Security Insurance Benefits in May 2001. [TR 132]. Stewart was found to be disabled and was awarded benefits on May 24, 2001 based on an anxiety disorder. [*Id.*; TR 309]. Subsequently, Stewart's benefits were suspended because she was incarcerated for more than 30 days. [TR 121].

Upon release from incarceration, Stewart filed a new application for benefits on March 20, 2009, alleging disability beginning March 1, 1991. [TR 15]. On May 6, 2009, Stewart underwent a consultative examination, conducted by Reba Moore, a licensed psychological practitioner. [TR 231-39]. During the examination, Stewart reported thyroid problems, back pain, visual

problems, hypertension, and an irregular heartbeat. [TR 233]. Stewart reported drug abuse that began after her divorce. [*Id.*]. Additionally, Stewart reported that she had a psychiatric hospitalization in 1996. [*Id.*]. Stewart reported that she has attempted suicide multiple times from childhood until 1996. [*Id.*]. Furthermore, Stewart reported an attempted overdose in 2006 or 2007. [*Id.*]. Stewart also reported hospitalizations in 2006 related to her drug dependency issues. [*Id.*].

As part of the consultative examination, a Wechsler Adult Intelligence Scale – Third Edition (WAIS-III) was administered to Stewart. [TR 235]. Stewart was found to have a verbal IQ score of 67, a performance IQ score of 80, and a full-scale IQ score of 71. [*Id.*]. Stewart's verbal IQ score falls within the range of mild mental retardation and Stewart's performance and full-scale scores are in the borderline range. [*Id.*]. Finally, Stewart's reading skills are at a second-grade level and her mathematical skills are at a fifth-grade level. [TR 237]. After the examination, Moore's diagnostic impression found that Stewart suffers from anxiety disorder, reading disorder, and borderline intellectual functioning. [TR 238].

Stewart's claim for benefits was denied initially and upon reconsideration. [TR 55-57, 62-64]. Stewart then pursued her claims at a hearing in front of ALJ Tommye C. Mangus on March 29, 2010. [TR 28-52]. ALJ Mangus issued a decision on August 6, 2010,

denying Stewart's claims and finding that she was not disabled. [TR 12-27]. The Appeals Council denied review. [TR 1-6].

Having exhausted her administrative remedies, Stewart pursued judicial review of the Commissioner's decision on February 1, 2012. *See Stewart v. Astrue*, No. 12-cv-28-JBC, 2012 WL 3063968 (E.D. Ky. July 26, 2012). The court remanded the case so that the ALJ could obtain Stewart's school records to help determine whether Stewart had an intellectual disability[1] that manifested prior to age twenty-two. *Id.* at *2-3.

Subsequently, attempts were made to retrieve Stewart's school records from Somerset Independent Schools. [TR 496-501]. The only record obtained was a Census Card that reflects the years that Stewart attended Somerset Independent Schools and what grade she was enrolled in during a given school year. [TR 499-500].

Then, on November 5, 2013, a second hearing was held in front of ALJ Mangus. [TR 346-72]. During the second hearing, ALJ Mangus heard testimony from Stewart and from Dr. James Miller, a vocational expert. [*Id.*]. Additionally, Stewart was represented

---

[1] Current listing standards use the term "intellectual disability" instead of "mental retardation" to define intellectual disorders. *See* 20 C.F.R. pt. 404 subpt. P, app. 1, § 12.00(B)(4)(b). While the previous regulation applies (*see infra*, Part IV), the Court will primarily use the term intellectual disability to refer to intellectual disorders. For this opinion, there is no substantive difference in meaning between the two terms.

4

at the hearing by Kim Murphy, a paralegal and non-attorney representative. [*Id.*].

After the second hearing, ALJ Mangus again concluded that Stewart was not disabled. [TR 299-317]. The ALJ found that Stewart had not engaged in substantial gainful activity since March 20, 2009 and that Stewart had the following severe impairments: 1) borderline intellectual functioning; 2) reading disorder; 3) a history of anxiety disorder; and 4) a history of polysubstance disorder, in sustained full remission. [TR 304-05].

Still, at step three, ALJ Mangus found that the severity of Stewart's impairments, singly and in combination, did not meet the criteria of listings 12.02, 12.05, 12.06, and 12.09. [TR 306-09]. Pertaining to whether Stewart suffers from an intellectual disability under listing 12.05, the ALJ noted a minimal history of mental health treatment and acknowledged that Stewart's verbal IQ score of 67 was "within the range contemplated by 'paragraph C' . . . ." [TR 307-08]. Even so, the ALJ concluded that there was insufficient evidence to demonstrate that Stewart's intellectual disability manifested before the age of twenty-two. [TR 308-09].

Furthermore, the ALJ concluded that the record indicated that Stewart could "perform a full range of work at all exertional levels, so long as the work [was] limited to simple, routine tasks with only verbally presented, unwritten instructions." [TR 309]. Additionally, the ALJ concluded that there were a significant

5

number of jobs in the national economy that Stewart could perform based on her age, education, work experience, and residual function capacity. [TR 311]. The Appeals Council again denied review of Stewart's claim. [TR 291-97].

Thus, Stewart filed this action on October 27, 2017. [DE 2]. The ultimate issue here is whether there is proof of intellectual disability during Stewart's developmental period. Stewart argues that evidence of her enrollment in special education courses and being held back in third grade demonstrate an intellectual disability that manifested before age twenty-two. [DE 13, pp. 1-2; DE 13-1, pp. 1, 6-15]. Alternatively, the Commissioner argues that the ALJ's decision is supported by substantial evidence because the evidence of Stewart's attendance in special education courses and being held back is insufficient to demonstrate an intellectual disability that manifested before age twenty-two. [DE 17, pp. 4-7].

### III. Standard of Review

When reviewing the ALJ's ruling, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human*

*Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### IV. Analysis

As an initial matter, listing 12.05 was revised in September 2016 with an effective date of January 17, 2017. 81 Fed. Reg. 66,137, 66,138 (Sept. 26, 2016). The Social Security Administration "expect[s] that [f]ederal courts will review [the Commissioner's] final decisions using the rules that were in effect at the time [the Commissioner] issued the decision." *Id*. at 66,138 n.1. When the ALJ denies benefits and the Appeals Council denies review, the ALJ's decision is reviewed as the Commissioner's final decision. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h). Here, the ALJ's most recent decision was decided on December 24, 2013. [TR 299-317]. Thus, the previous version of Listing 12.05 is applicable to this review. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (effective Dec. 24, 2013).

Listing 12.05 covers the mental disorder of intellectual disability. 20 C.F.R. pt. 404 subpt. P, app. 1, § 12.05. To meet

7

the 12.05 listing standard, a claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." *Id.* Additionally, the claimant must meet the criteria in subparts A, B, C, or D. *Id.* 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 to 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.; see Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

"The plaintiff has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). A claimant must demonstrate impairment that satisfies the diagnostic description of the listed impairment in the introductory paragraph and any one of the four listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A)(3), 12.05.

Here, there is substantial evidence to support the ALJ's conclusion that Stewart did not meet the criteria for listing 12.05C. Stewart's verbal IQ score of 67 does partially meet the listing criteria for intellectual disability. [See TR 307-08]. Even so, Stewart must also demonstrate that she had an intellectual disability that manifested during the developmental period. 20 C.F.R. pt. 404 subpt. P, app. 1, § 12.05. Stewart's current IQ scores, standing alone, are insufficient to meet the 12.05 listing

8

standard.  *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491-92 (6th Cir. 2010).

Stewart relies heavily on *Mowery v. Heckler*, asserting that *Mowery* is factually similar and that Stewart's suffering from a variety of medical problems demonstrates that she has a significant work-related limitation.  *See* 771 F.2d 966 (6th Cir. 1986).  But the *Mowery* decision is not controlling here because the *Mowery* court applied an earlier version of the listing standards.  *See Turner*, 381 F. App'x at 492 n.1.  The 12.05 listing standard has since been amended and requires that a claimant establish a current IQ between 60 and 70 *and* that he or she demonstrated subaverage mental functioning and adaptive deficits during the developmental period.  *See* 65 Fed. Reg. 50746, 50776 (August 21, 2000); *see also id.*; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (discussing the amendment).

Of course, a claimant does not have to produce IQ scores from before age 22 to meet the 12.05 listing requirement.  *See West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007).  Claimants may use other evidence such as test scores, history of mental health treatment, poor academic performance, limitations in daily activities, and limitations in social functioning, among other evidence, to demonstrate manifestation of intellectual disability during the developmental period.

9

Here, Stewart has submitted evidence that she claims demonstrates a manifestation of intellectual disability during the developmental period. First, Stewart testified that she was enrolled in special education courses. [TR 323, 342-43]. Second, Stewart has submitted a Census Card from the Somerset Independent School System that demonstrates that she was held back in third grade. [TR 499-500].

Even so, there is substantial evidence in the record to support the ALJ's finding that Stewart failed to demonstrate manifestation of an intellectual disability during the developmental period. First, the fact that Stewart was enrolled in special education courses does not demonstrate an intellectual disability that manifested during the developmental period. There are various reasons why a student may attend special education courses. Second, the Census Card demonstrates that Stewart was held back in third grade. Even so, the Census Card also demonstrates that Stewart skipped from fifth to seventh grade. Additionally, the Census Card suggests that Stewart was not enrolled in school in the 1972-73 and the 1980-81 school years but it does not demonstrate why Stewart was not attending school during these years or why she failed to complete her studies. *See Foster*, 279 F.3d at 355 (stating that evidence that claimant did not complete ninth grade was insufficient to show subaverage intellectual functioning

during the developmental period because it was unclear why the claimant had failed to complete her education).

Ultimately, Stewart's attendance in special education courses and retention in third grade demonstrate that she had poor academic performance, but they do not demonstrate that an intellectual disability manifested during her developmental period. "[P]oor academic performance, in and of itself" does not establish onset of subaverage intellectual functioning during the developmental period. *Hayes v. Comm's of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009). Stewart's poor academic performance in school could be attributable to a variety of reasons or circumstances, such as her home life or a general disinterest in academics, that are unrelated to Stewart's intellectual functioning.

Moreover, the record indicates that Stewart has a history of drug dependency and abuse as an adult. [TR 233, 117-30]. The ALJ observed that Stewart's drug use after the age of twenty-two could have had some impact on her current level of intellectual functioning. [TR 18].

Additionally, the ALJ relied on other evidence in the record that suggests that Stewart does not suffer from an intellectual disability. Stewart underwent a consultative evaluation with Reba Moore, a licensed psychological practitioner. Additionally, the record was reviewed by two state agency reviewers, Dr. H. Thompson Prout and Dr. Ed Ross. [TR 240-57, 271-85]. Importantly, while

11

acknowledging some borderline intellectual functioning, Moore, Prout, and Ross all stopped short of diagnosing Stewart with intellectual disability.

Furthermore, the ALJ noted that Stewart can attend to her personal care, complete household chores, goes shopping, drives a vehicle, and manages her money as needed, which demonstrates no more than a mild limitation with activities of daily living. [TR 307]. Furthermore, the ALJ observed that, even with moderate difficulties in social functioning, Stewart has regular social interaction with family, watches television, talks on the phone, regularly attends church, and plays bingo. [*Id.*]. The ALJ also noted that even during Stewart's incarceration she maintained normal judgment and demonstrated appropriate behavior, memory, mood, and affect. [*Id.*].

In sum, this case was previously remanded to gather Stewart's academic records. *See Stewart v. Astrue*, No. 12-cv-28-JBC, 2012 WL 3063968 (E.D. Ky. July 26, 2012). Previously, the Court held in part that "[i]f the school records are requested and not received, then the ALJ may deny benefits." Id. at *3. The only record obtained from the Somerset Independent Schools was the Census Report.

Here, Stewart's scant academic history is both inconclusive and insufficient to demonstrate manifestation of an intellectual disability during the developmental period. The record suggests

that Stewart had poor academic performance but the reason for the poor performance is unclear.  Furthermore, Stewart was evaluated by a psychological practitioner and the record was reviewed by two state agency reviewers who all stopped short of diagnosing Stewart with an intellectual disability.  Finally, Stewart's adaptive and social functioning suggests that she can complete daily tasks with only mild to moderate difficulty.  As such, there is sufficient evidence in the record to support the ALJ's conclusion that Stewart has not demonstrated manifestation of intellectual disability before age twenty-two and there has failed to meet the criteria for listing 12.05.

**V. Conclusion**

Having found no legal error on the part of the ALJ and that the decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 13] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [DE 17] is **GRANTED**;

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 1st day of October, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge